IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | | |
|---|---|---|
| **SAMANTHA L. MUSICK, ETC.,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:11CV00005 |
| | ) | |
| v. | ) | **OPINION AND ORDER** |
| | ) | |
| **DOREL JUVENILE GROUP, INC.,** | ) | By:   James P. Jones |
| | ) | United States District Judge |
| | ) | |
| Defendant. | ) | |

    *S.D. Roberts Moore, Charles H. Smith, III, and Anthony M. Russell, Gentry Locke Rakes & Moore, LLP, Roanoke, Virginia, and T. Shea Cook, T. Shea Cook, P.C., Richlands, Virginia, for Plaintiff; Lynne Jones Blain, Harman, Claytor, Corrigan & Wellman, Richmond, Virginia, and Walter C. Greenough and Jonathan Judge, Schiff Hardin LLP, Chicago, Illinois, for Defendant.*

    In this products liability personal injury case, the plaintiff, a child who sues by her mother, alleges that she was seriously injured in an automobile accident when she was five years old while seated in a child safety seat manufactured by the defendant.  She contends that because the car seat was defective she suffered traumatic brain injuries for which she will require care for the remainder of her life. In advance of trial, the defendant has moved in limine to exclude as speculative any expert opinions as to the child's future lost earning capacity.  For the following reasons, the motion will be denied.

I

According to her Complaint, the plaintiff, Samantha L. Musick,[1] suffered serious brain injuries when her family's mini-van was rear-ended at the intersection of West Highlands Boulevard and Lee Highway in Bristol, Virginia. At the time of the accident, Samantha was five years old and seated in a Dorel Commuter High Back Booster seat manufactured by the defendant Dorel Juvenile Group, Inc. ("Dorel"). The plaintiff seeks an award of damages for her injuries based on alleged negligent design of the car seat, a failed duty to warn of its dangerous conditions, and breach of express warranties and the implied warranties of merchantability and fitness. The case is founded on the court's diversity jurisdiction. 28 U.S.C.A. § 1332(a) (West 2006).

As part of her damages, the plaintiff seeks compensation for loss of earning capacity. She contends that she has suffered a total loss of earning capacity, since she will now be incapable of any type of competitive employment. The plaintiff

---

[1] The rules provide that court filings must contain only the initials of a minor. Fed. R. Civ. P. 5.2(a)(3). The plaintiff is a minor but her Complaint and other filings by the parties contain her full name. It is provided that a person waives the protection of Rule 5.2 as to the person's own information by filing without redaction, Fed. R. Civ. P. 5.2(h), and while there may be some question as to whether a minor's rights in this regard may be waived, I will use the plaintiff minor's name, in light its prior disclosure. *See Orlandi ex rel. Colon v. Navistar Leasing Co.*, No. 09 Civ. 4855(THK), 2011 WL 3874870, at *1 n.1 (S.D.N.Y. Sept. 2, 2011).

retained Peder Melberg, a vocational rehabilitation expert, and William Cobb, Ph. D., an economist, to assist with the quantification of her lost earning capacity.

During his assessment, Melberg evaluated the plaintiff's characteristics and family background to determine the level of education she likely would have obtained absent her injury. (Melberg Dep. 5:17-21, 17:10-19, Jun. 27, 2011.) Specifically, Melberg interviewed the plaintiff and her parents, reviewed the plaintiff's academic reports and medical records, interviewed two of her treating physicians,[2] and studied the Musick family's academic history.[3] (Melberg Report 1-2.)  Based on this individualized information, Melberg concluded that, if not for her injuries, the plaintiff would have had the capacity to complete high school or an associate degree. (*Id.* at 3.)

By combining this individualized data with statistical tables from the U.S. Census Bureau, Melberg determined the earning capacity associated with the plaintiff's probable level of education.   For example, Melberg showed that, in 2009,

---

[2] Melberg interviewed Pamela Waaland, Ph. D., a neuropsychologist, and David E. Ross, M.D., a neuropsychiatrist.  He pointed out that Dr. Waaland concluded that Samantha's pre-injury educational capabilities likely would have equaled or exceeded those of her immediate family.

[3] Melberg noted that the plaintiff's mother is a licensed practical nurse who completed high school and vocational school.  Her father earned his GED, and her two older sisters are both performing well in school with hopes to attend college.  In addition, Melberg studied the educational background of the plaintiff's aunts and uncles, all of whom completed a high school level education (two with GEDs), and several of whom completed at least some college.

a female with a high school education earned an average of $24,304 annually, and a female with an associate degree earned an average of $33,434 annually. (*Id.* at 4.)

Finally, Dr. Cobb used Melberg's findings to calculate the plaintiff's future earnings and reduce them to present value. He determined that the present value of Samantha's lost earning capacity is between $576,896 and $1,195,074, depending on the specific variables applied. (Cobb Report 2.) For instance, Dr. Cobb calculated Samantha's earning capacity if she worked until age 44-45, or if she worked until retirement age. (*Id.*) He also calculated her earning capacity both with and without an associate degree. (*Id.* at 1.)

Dorel has moved in limine to exclude the opinions of Melberg and Dr. Cobb, arguing that they are speculative because they are based on generalized employment and earnings statistics about the population at large, and not on facts specific to the plaintiff. The motion has been briefed and is ripe for decision.

II

The parties agree that Virginia law applies to the admissibility of these experts' opinions. In Virginia, a plaintiff must prove damages with "reasonable certainty." *Gwaltney v. Reed*, 84 S.E.2d 501, 502 (Va. 1954). Although "mathematical precision" is not required, the plaintiff must "furnish evidence of

sufficient facts or circumstances to permit at least an intelligent and probable estimate" of damages. *Id*. at 502. In order to reliably calculate lost future income or loss of earning capacity, the evidence must be "grounded upon facts specific to the individual whose loss is being calculated." *Bulala v. Boyd*, 389 S.E.2d 670, 677 (Va. 1990).

In a personal injury action, a plaintiff is not prohibited from recovering damages for lost future income or for diminution of earning capacity by reason of her infancy. *See Moses v. Akers*, 122 S.E.2d 864, 866 (Va. 1961). However, statistical evidence alone is too speculative and cannot form a sufficient basis for such damages. The "evidence must relate to facts and circumstances personal to the plaintiff as an individual, not merely to [her] membership in a statistical class." *Bulala*, 389 S.E.2d at 678.

Applying these standards to the opinions offered by Melberg and Dr. Cobb, the defendant's Motion in Limine must be denied.

There is little Virginia case law dealing with the calculation of lost earning capacity for infants. The defendant relies on a pair of cases — *Bulala v. Boyd* and *Chretien v. General Motors Corp.,* Nos. 90-2090, 90-2110, 1992 WL 67356 (4th Cir. Apr. 6, 1992) (unpublished) — to argue that Melberg and Dr. Cobb's opinions

are insufficient to support the plaintiff's claim.[4]  In *Bulala*, an economist predicted an infant's lost earning capacity simply by multiplying the median income for women in metropolitan areas in Virginia by the national average work life expectancy. 389 S.E.2d at 677.  The Supreme Court of Virginia held that this method was purely statistical and too remote to "permit an intelligent and probable estimate" of the infant's lost earning capacity.  *Id*. at 678.  Similarly, in *Chretien*, a fifteen-year-old plaintiff sought to recover lost earnings based exclusively on an actuarial report and a general indication that she was "a good, college-bound student with aspirations of becoming an accountant." 1992 WL 67356, at *9.  Applying Virginia law, the trial court struck the plaintiff's claim as too speculative and the Fourth Circuit affirmed its decision.  *Id*.

The present evidence can be distinguished from that in the prior case law. Melberg and Dr. Cobb base their conclusions on a materially different type of information than the evidence at issue in *Bulala* and *Chretien*.  Instead of only using statistical averages to calculate lost earning capacity, the plaintiff's experts

---

[4] The defendant also discusses *Murphy v. United States,* 833 F. Supp. 1199, 1207-08 (E.D. Va. 1993)*,* in support of its argument. (Def.'s Mem. in Rebuttal to Pl.'s Mem. in Opp'n to Mot. to Exclude Opinions of Peder Melberg & Dr. William Cobb 2.)  In that case, the court refused to accept the plaintiff's calculated lost earnings, despite the fact that she was not an infant and had a prior work history. However, the plaintiff in *Murphy* had chosen to stop working five years prior to her accident, and there was no evidence that she planned to return to work on or near the date of her accident.  *Id*. at 1208.  Here, the plaintiff made no such choice to completely remove herself from the workforce prior to her accident.  Thus, the present case is distinguishable.

combine facts personal to the plaintiff with national data that corresponds to the individualized evidence. Melberg considers the plaintiff's academic reports and medical records; a neuropsychologist's evaluation of the plaintiff; the Musick family's educational and vocational background; and his own diagnostic interview with the plaintiff and her parents. Dr. Cobb then takes this individualized data and uses it to calculate the plaintiff's future earnings. Thus, Melberg and Dr. Cobb's evaluation complies with the Supreme Court of Virginia's call for a more individualized analysis of lost earning capacity.

It is true that, even with their individualized technique, Melberg and Dr. Cobb cannot know with certainty the plaintiff's exact vocational path if not for her accident. However, quantification of damages is frequently not an exact undertaking. Precise calculations of actual lost earnings are impossible, especially when the plaintiff is an infant. Melberg and Dr. Cobb reach beyond generalized statistics and base their conclusions on information personal to the plaintiff. The fact that the plaintiff's ascertainable characteristics are limited by her youth is unavoidable and should not prevent her from presenting evidence to a jury of lost earning capacity.

III

For these reasons, it is **ORDERED** that the defendant's Motion in Limine to Exclude Opinions of Peder Melberg and Dr. William Cobb (ECF No. 50) is DENIED.

ENTER: October 13, 2011

/s/   James P. Jones
United States District Judge