IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ABINGDON DIVISION

| | |
|---|---|
| SAMANTHA L. MUSICK, an infant, etc., )<br>   Plaintiff, )<br> )<br>v. )<br> )<br>DOREL JUVENILE GROUP, INC., )<br>   Defendant. )<br> )<br> ) | **MEMORANDUM ORDER**<br>Civil Action No.  1:11cv000005 |

   This matter is before the undersigned on Plaintiff's Motion For Discovery Sanctions Based on Defendant's Failure To Comply With Rule 30(b)(6), (Docket Item No. 95), and Plaintiff's Motion For Discovery Sanctions Based On False Statements By Defendant And Failure To Produce Documents As Ordered, (Docket Item No. 128), ("Motions").  This matter involves a products liability personal injury claim brought on behalf of a seriously injured young girl against the manufacturer of a child car safety seat, the High Back Booster.  The matter is set for jury trial beginning October 31, 2011.  Discovery in this matter closed on September 16, 2011. The Motions were heard before the undersigned on October 12, 2011. Based on the arguments and representations of counsel and the discovery materials presented for review, the court makes the following findings:

  1. Plaintiff's counsel served the following request for production on defense counsel:

    "9.  All documents which discuss, relate to or contain references to employing the use of EPS, or other energy-absorbing materials, on the side wings of the defendant's High Back Booster from 1999 to present;"

2. Defendant responded to Request for Production No. 9:

"DJG has no responsive documents;"

These responses were signed by defense counsel, Walter C. Greenough;

3. On June 22, 2011, plaintiff's counsel moved the court for an order compelling the production of documents responsive to Request for Production No. 9;

4. A hearing on the motion to compel was conducted before the undersigned on July 15, 2011. At this hearing, despite evidence discovered by plaintiff's counsel that the defendant had previously undertaken a project in approximately 2002 to consider adding protective foam to the side wings of all of its child safety seats manufactured for distribution in the United States, the "Protective Foam Project,"[1] Greenough, assured the court that the defendant's response to Request for Production No. 9 was accurate because the child safety seat at issue in this case, the High Back Booster, was not a part of the Protective Foam Project. Greenough unequivocally stated that the defendant had never considered adding foam to the side wings of the High Back Booster;

5. After further review of the materials provided by plaintiff's counsel for consideration on the motion to compel, the undersigned specifically found that the defendant's response to Request for Production No. 9 was "inaccurate" and that documents had existed which were responsive but had not been provided. By Order entered July 18, 2011, the undersigned ordered the defendant to produce all responsive documents within 10 days;

6. Subsequent to this Order, according to plaintiff's counsel, additional documents were produced by the defendant. These documents included a "Computer Assisted Design," ("CAD"),

---

[1] This project has been referred to by numerous names including the "Protective Foam Project," "Side impact foam for all car seats" project and the "protective foam added to head area of seat shells" project. The court will refer to it as the "Protective Foam Project."

depiction of the High Back Booster with foam added created by an outside consulting firm at the request of the defendant;

7. In their subsequent discovery and investigation, plaintiff's counsel have discovered that the High Back Booster was one of the seats considered in the Protective Foam Project. Evidence of this has come from at least three separate former employees of the defendant in their deposition testimony. One of these former employees, Richard Glover, was the Fed. R. Civ. P. Rule 30(b)(6) corporate representative designated by the defendant to answer questioning regarding the Protective Foam Project. Plaintiff's counsel also have discovered, in the documentation of another products liability case file, at least one multiple-page document which is responsive to Request for Production No. 9 and which shows that the defendant, at one point, specifically considered pulling the High Back Booster from the market only to return the seat to the market after the addition of foam on the side wings;

8. Faced with this evidence, Greenough admitted to the court, at the October 12, 2011, hearing that the defendant's response to Request for Production No. 9, which he signed, was inaccurate and that his statement to the court was inaccurate. Greenough stated to the court that he had simply "forgotten" that the document which was found in the other case file existed. Greenough also admitted that he had not reviewed this, or any other, case file before responding to the production. In fact, Greenough has offered this court no information regarding whether he reviewed any documentation from the defendant or spoke to any of the defendant's representatives in responding to Request for Production No. 9. Instead, he has stated to the court that he is the person who is responsible for providing the defendant's discovery responses and that, if those responses are inaccurate or incomplete, he is the person responsible for it;

9. Plaintiff's counsel served supplemental requests for production requesting that the defendant:

24. Produce all documents related to the "protective foam project" and "protective foam added to head area of seat shells" project.

    31. Produce a copy of all documents which relate to the defendant's decision to add foam to the Vantage High Back Booster.

10. The evidence produced to the court establishes the existence of this Protective Foam Project and the inclusion of the High Back Booster in the project. This evidence also shows, that after the defendant began this project, it decided to add foam to the head side wings of additional seats but not to the High Back Booster. The evidence also establishes that, at one time, numerous other documents concerning the project, such as consultant invoices, data from which CAD depictions were made, correspondence and emails, existed. According to plaintiff's counsel, "[n]ot a single document describing the decision process" made as a result of the Protective Foam Project has been produced. Nor has the defendant or counsel provided plaintiff's counsel or the court with any explanation as to why these numerous other documents have not been produced;

11. The court finds that the defendant's failure to produce these documents violates the court's July 18, 2011, order compelling their disclosure;

12. On September 14, 2011, the defendant produced Glover as its Rule 30(b)(6) corporate designee to be deposed on topics including:

    1. The project referred to as the "Side impact foam for all car seats," .... Defendant will be asked to address the purpose and progress of the project, the decision-making process involved in determining which seats would get foam, and the basis for determining that the ... High Back Booster would not get foam.

    ...

    4. The rationale for incorporating foam to the head area and side wings of the Vantage High Back Booster, but not to the head area and side wings of the Commuter/Ventura High Back Booster.

> Despite being produced as the corporate designee on these topics, Glover possessed very limited information concerning the Protective Foam Project. In fact, Glover testified that, when he worked for the defendant, if anyone had a question about the Protective Foam Project, he would have referred them to Ken Mitchell, the defendant's then head of marketing, because he, Glover, knew little about the project. Glover also admitted that he did not know who made the decision or why the decision was made to include foam on some of the defendant's seats and not others as a result of this project. (Transcript of Deposition of Richard Glover taken September 14, 2011, at 45, 61-63); and

13. The defendant failed to produce an adequate corporate designee pursuant to Rule 30(b)(6) on the two topics listed above.

Based on the above, and pursuant to Fed. R. Civ. P. 37(b)(2)(A) and (C), the Motions are **GRANTED in part**, **DENIED in part and TAKEN UNDER ADVISEMENT in part**, and it is **ORDERED** as follows:

1. The defendant shall be precluded from offering at trial any evidence with regard as to why it chose not to add foam to the head area side wings of the High Back Booster as a result of the Protective Foam Project; and

2. Plaintiff's counsel shall provide the court with an itemized, sworn statement of the fees and expenses that they claim have been incurred by the plaintiff specifically in an effort to prove that the High Back Booster was included in the "Protective Foam Project" and why the determination was made that foam should not be added to it. This statement should be provided to the court by no later than October 24, 2011. The defendant may respond to the statement within seven days of the date of its filing.

Discovery in the federal courts is not to be construed as a game of "hide and seek." Our federal civil justice system depends upon parties, and their counsel, honestly, diligently and completely responding to discovery requests. In this case, the defendant has not done so. Based on the facts and circumstances currently

before the court, I cannot determine whether the defendant's actions amount to only careless indifference to the discovery rules and the orders of this court or are, instead, an egregious effort to purposely conceal evidence from the plaintiff. In either case, however, such actions cannot be tolerated. Nor can such actions be remedied by a mere apology to the court. While I find that the severe sanction sought by the plaintiff is not appropriate under these facts and circumstances, *see Mut. Fed. Sav. & Loan Ass'n v. Richards & Assocs., Inc.*, 872 F.2d 88, 92 (4th Cir. 1989) (citing *Nat'l Hockey League v. Metro Hockey Club, Inc.*, 427 U.S. 639, 642 (1976) and *Wilson v. Volkwagen of Am., Inc.*, 561 F.2d 494, 503-04 (4th Cir. 1977)),  I find that some sanction should be imposed, including, possibly, an award of fees and costs. Furthermore, the evidentiary sanction imposed above is narrowly tailored to limit the evidence that the defendant may present on the specific topic on which the defendant has not fully complied with discovery.

The Clerk's Office shall certify a copy of this Order to all counsel of record.

**SO ORDERED** this 14th day of October, 2011.

/s/ *Pamela Meade Sargent*
UNITED STATES MAGISTRATE JUDGE